FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA 2012 JUL 27  AM 9: 36
### JACKSONVILLE DIVISION

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

CONGRESSWOMAN CORRINE BROWN,
SOUTHERN CHRISTIAN LEADERSHIP
CONFERENCE, JACKSONVILLE, FLORIDA
CHAPTER, DUVAL COUNTY DEMOCRATIC
EXECUTIVE COMMITTEE, PASTOR REGINALD
GUNDY, BISHOP LORENZO HALL, JERRY WEST,
CARL GRIFFIN, ELDER LEE HARRIS,
HELEN GRIFFIN TURNER, VALERIE WEEKS,
ELAINE FORD JACKSON AND FRANCES R. SIMMONS,
INGRID FLUELLEN AND EZEKIEL C. MANN,

CASE NO.:

3:12-CV-852-J-99TJC-MCR

    Plaintiffs,

    v.

KEN DETZNER, in his official capacity
as Florida Secretary of State, and  JERRY
HOLLAND, in his official capacity
as Supervisor of Elections for Duval County, Florida,

    Defendants.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COME NOW the Plaintiffs, **CONGRESSWOMAN CORRINE BROWN,** an

individual, **THE SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE,**

**JACKSONVILLE, FLORIDA CHAPTER,** a civil rights/civic organization, **DUVAL**

**COUNTY DEMOCRATIC EXECUTIVE COMMITTEE,** a political organization,

**PASTOR REGINALD GUNDY, BISHOP LORENZO HALL, JERRY WEST,**

**CARL GRIFFIN, ELDER LEE HARRIS, HELEN GRIFFIN TURNER, VALERIE**

**WEEKS, ELAINE FORD JACKSON, FRANCES R. SIMMONS, INGRID**

**FLUELLEN and EZEKIEL C. MANN**, individuals, by and through their undersigned counsel, and by way of this Complaint seek declaratory and injunctive relief against Defendants, **KEN DETZNER**, in his official capacity as Florida Secretary of State, and **JERRY HOLLAND**, in his official capacity as Supervisor of Elections, Duval County, Florida (at times herein referred to as "Defendants"), as follows:

### INTRODUCTION

1.   This is a lawsuit for declaratory judgment and injunctive relief wherein Plaintiffs seek to restore: (1) early voting for all persons in Duval County, Florida and the State of Florida during the Sunday immediately prior to Election Day ("Sunday Voting"); and (2) the beginning of early voting on the 15th day rather than the 10th day before Election Day. The law of Florida, in particular § 101.657(d), Fla. Stat. (2005), was amended by Chapter 2011-40, Laws of Florida (the "Act"), approved by Governor Rick Scott on May 19, 2011. The Act revised numerous statutes within Title IX of the Florida Statutes, entitled Electors and Elections (§§ 97-107, Fla. Stat. (2005)). On August 14, 2012 and November 6, 2012, elections in Duval County, Florida will be affected for the first time by the Act, and Sunday Voting will be prohibited as well as five (5) days of early voting will be denied. *See* § 101.657(d), Fla. Stat. (2011). Unless the changes made to § 101.657(d), Fla. Stat. (2005) by the Act are enjoined by this Court, the individual Plaintiffs and voters represented by organizational Plaintiffs will be directly and irreparably harmed in upcoming elections.

2.   African American citizens of Duval County, Florida, and throughout the State of Florida, have disproportionately relied upon early voting in recent elections. As

2

set forth in this Complaint, the changes in § 101.657(d), Fla. Stat. (2005), which deny citizens the right to Sunday Voting and truncates early voting to beginning on the 10th day rather than the 15th day before an election, were made for the purpose of suppressing the votes of, *inter alia*, African American voters and was motivated by racial considerations. Accordingly, § 101.657(d), Fla. Stat. (2011) violates: (1) the Constitutional rights of African American citizens under the First, Fourteenth and Fifteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983; (2) Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973(a); and (3) the Florida Constitution.

3.      Plaintiffs seek a judicial declaration that the Act's amendments to § 101.657(d), Fla. Stat. (2005), resulting in the denial of Sunday Voting and the starting of early voting on the 10th day before an election, is unlawful discrimination on account of race, are unconstitutional and violate the rights of African American citizens of Duval County, Florida and the State of Florida under the United States Constitution, the Voting Rights Act of 1965 and the Florida Constitution. Finally, Plaintiffs seek a preliminary injunction and permanent injunction prohibiting Defendants from implementing or enforcing the Act's amendments to § 101.657(d), Fla. Stat. (2005), thereby restoring early voting through the second day immediately preceding Election Day and the start of early voting on the 15th day before Election Day.

## PARTIES

4.      Plaintiff Congresswoman Corrine Brown is a member of the United States House of Representatives from the Third Congressional District, which encompasses in

part, Duval County, Florida.  Congresswoman Brown is African American and resides in

the City of Jacksonville, Duval County, Florida. Congresswoman Brown has constituents

in Jacksonville, Florida.  As she seeks re-election, many of Congresswoman Brown's

supporters will seek to cast their ballots early for the general election, but will be unable

to do so the Sunday before Election Day or from the 15th day prior to Election Day.

Also, as a member of Congress representing predominately African American

constituents, one of Congresswoman Brown's endeavors is to empower African

American citizens in civic and democratic endeavors, and to assist members of the

African American community in, among other things, voting rights issues.  Additionally,

to achieve her goals, Congresswoman Brown facilitates voter education and voter

mobilization efforts.  The unlawful practices as set forth in this Complaint have frustrated

the Congresswoman's endeavors and she is required to expend resources to educate her

constituents about the unlawful practices as related to the Act, in order to combat them, at

the expense of her regularly conducted programs and activities.  Congresswoman Brown

is also individually affected by the Act, as her individual rights have been, and will

continue to be, affected by the implementation of the Act regarding early voting.

5.     Plaintiff Southern Christian Leadership Conference, Jacksonville, Florida

Chapter ("SCLC Jacksonville") is a Jacksonville, Florida based civil rights organization

and a branch of the state and national Southern Christian Leadership Conference.  One of

the primary purposes of SCLC Jacksonville is to empower African American citizens in

civic and democratic endeavors, and to assist members of the African American

community in, among other things, voting rights issues.  To achieve its goals, SCLC

4

Jacksonville facilitates voter education and voter mobilization efforts. The unlawful practices as set forth in this Complaint have frustrated SCLC Jacksonville's mission and SCLC Jacksonville is required to expend resources to educate its members about the unlawful practices as related to the Act, in order to combat them, at the expense of its regularly conducted programs and activities. SCLC Jacksonville also has individual members who are affected by the Act regarding early voting.

6.      Plaintiff Duval County Democratic Executive Committee (DCDEC") is a Jacksonville, Florida based political organization. One of the primary purposes of DCDEC is to empower citizens in civic and democratic endeavors, and to assist members of the community in, among other things, voting rights issues. To achieve its goals, DCDEC facilitates voter education and voter mobilization efforts. The unlawful practices as set forth in this Complaint have frustrated DCDEC's mission and DCDEC is required to expend resources to educate its members about the unlawful practices as related to the Act, in order to combat them, at the expense of its regularly conducted programs and activities. DCDEC also has individual members who are affected by the Act regarding early voting.

7.      Plaintiffs Pastor Reginald Gundy, Bishop Lorenzo Hall, Jerry West, Carl Griffin, Elder Lee Harris, Helen Griffin Turner, Valerie Weeks, Elaine Ford Jackson, Frances R. Simmons, Ingrid Fluellen and Ezekiel C. Mann, are individuals, citizens of the State of Florida residing in the City of Jacksonville, Duval County, Florida, and are legally registered and duly qualified to vote in local, state and national elections in Florida. The individual Plaintiffs have their rights burdened and infringed by the change

5

in the early voting law of the State of Florida. The individual Plaintiffs have in-person early voted in Duval County, including the Sunday before Election Day. Due to work schedules, ability to travel to the polls and other reasons, the individual Plaintiffs are impeded or prevented from consistently voting on Election Day and benefit from the early voting law 14 day period and voting ending no earlier than the Sunday before Election Day.

8.     Defendant Ken Detzner is the Secretary of State of the State of Florida, and is being sued in his official capacity. The Secretary of State is the chief elections officer under Florida law and is responsible for administration of state laws affecting voting. Defendant Detzner is charged with statewide implementation of the Act.

9.     Defendant Jerry Holland is the Supervisor of Elections for Duval County, Florida, and is being sued in his official capacity. The Supervisor of Elections is the chief elections officer in Duval County, Florida and is responsible for administration of state laws affecting voting in Duval County, Florida, including the Act.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, 28 U.S.C. § 1367(a) and 42 U.S.C. §§ 1983 and 1988. Furthermore, this Court has jurisdiction to grant both declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2102.

11.     Venue in this district and division are proper pursuant to 28 U.S.C. §§ 1391(b) and (c), as a substantial part of the acts complained of herein occurred in the City of Jacksonville, Duval County, Florida.

## FACTUAL BACKGROUND

12.     The City of Jacksonville, Duval County, Florida has one of the highest

percentages of African American citizens of any similar jurisdiction in the State of

Florida.  Duval County currently has a population of over 800,000 people and

approximately 30 percent of the population is African American.

13.     The presidential general election held in November 2000 resulted in

approximately 27,000 votes that were not counted in Duval County.  A Duval County

Election Reform Task Force in 2001 concluded in its final report that: "The cumulative

effect of these failures [failures of votes that did not count and voters turned away from

the polls] **fell disproportionately upon our African-American population**, leading to a

concentrated loss of confidence in the system within this important segment of our

community." *Duval County, Election Reform Task Force*, "Final Report" (June 12,

2001) at p. 6 (emphasis added).

14.     During the 2004 presidential election, *The New York Times* newspaper

reported the following:

> JACKSONVILLE, Fla., Oct. 18 [2004]-Presidential voting in Florida began two
> weeks early on Monday, in an effort to avoid many of the problems that plagued
> Election Day 2000.
>
> But like persistent ghosts, some of those problems immediately resurfaced:
> longlines, trouble verifying voter registration data and a sense among black voters
> that they were being unfairly treated.
>
> Here in Duval County, the state's most populous, where suspicion still simmers
> after 27,000 votes were thrown out in 2000, mostly in black neighborhoods, the
> beleaguered elections supervisor abruptly resigned, citing health problems.  The
> elections office here has been under fire for opening only one early-voting site.

*In Florida, Early Voting Means an Early Return to Problems,* N. Y. TIMES, (October 19, 2004 (www.nytimes.com).

15.    Earlier in 2004, Fla. Stat. § 101.657(1)(b)(2004) was enacted, and provided that:

> Early voting shall begin on the 15th day before an election **and end on the day before an election.** For purposes of a special election held pursuant to s. 100.101, early voting shall begin on the 8th day before an election and end on the day before an election. Early voting shall be provided for a least 8 hours per weekday during the applicable periods. Early voting shall also be provided for 8 hours in the aggregate for each weekend during the applicable periods.

§ 101.657(1)(b), Fla. Stat. (2004)(emphasis added); Chapter 2004-252, § 15, at 14, Laws of Fla. The new law mandating early voting expanded a qualified voter's access to and participation in the political process.

16.    The 2004 changes to the Florida election laws were in response to the problems with voting that occurred in November 2000, leading Florida to, among other things, mandate a process for early voting. Early voting therefore became a defined term in Florida election law. In 2005, § 101.657 was amended again to provide that: "Early voting shall . . . end on the 2nd day before an election. . ." § 101.657(1)(d), Fla. Stat. (2005). Thus, early voting in Florida would end the Sunday immediately before Election Day.

17.    The 2011 Amendments to the Florida Elections Code were originally introduced as legislation H.B. 1355 on March 7, 2011 (the "Omnibus Elections Legislation"). That legislation did not provide for any changes to early voting. On April 30, 2011, an amendment was filed by State Senator Miguel Diaz de la Portilla that

proposed a start to early voting the 7th day before an election, as opposed to the existing

15th day before an election.  Early voting on the Sunday before Election Day, however,

was not addressed in the amendment.

18.     Thereafter, State Senator Diaz de la Portilla offered another amendment

that proposed a start to early voting on the 10th day before an election and an end to early

voting the 3rd day before the election.  These amendments were contained in the final

legislation that passed the legislature on May 5, 2011.

19.     The Staff Analysis of the Florida House of Representatives of the

Omnibus Elections Legislation concluded that the legislation provided an

"indeterminate" fiscal impact on both local and state governments.  *House of*

*Representatives Staff Analysis, CS/HB 1355,* Storage Name h1355.GVOPS, 4/11/2011 at

13.

20.     However, by letter dated April 29, 2011, the Florida State Association of

Supervisors of Elections ("FSASE") commented on Senator Diaz de la Portilla's

proposed amendment to the early voting law, in pertinent part, as follows:

> During the last two General Elections early voting has been a tremendous success
> in Florida and the voters have responded by voting in significant numbers during
> the time allocated.  The Florida State Association of Supervisors of Elections
> believes that maintaining the 15-day timeframe best serves the voting public.  As
> always, we also strongly support added flexibility on the types of locations we
> may use for early voting to better serve voters. . .

> During the Senate Budget Committee meeting on April 26, amendments were
> suggested which would guarantee that the current timeframe of 96 hours would be
> maintained, however be provided for in fewer days.  Since that meeting, a number
> of proposals concerning this issue have surfaced.  An initial estimate from several
> counties indicates that due to overtime and other associated expenses, this
> proposal will increase costs to counties. . .

*See FSASE 4/29/2011,* Submission to Florida State Senate, (Attached hereto as Exhibit A).

21.     FSASE also advised the Florida Senate on April 18, 2011, the following concerns regarding the proposed amendments shortening early voting days: "Section 35. This requires that early voting begin seven days before the election, rather than 15. While this may be workable with respect to primary elections, **not having the 15-day timeframe for the General Election could result in crowding and confusion at early voting sites and on Election Day at the precincts.  Maintaining 15 days for the General Election is imperative to a smooth General Election in the state.**  Flexibility in choosing early voting locations is critical." *FSASE 4/18/2011 Memorandum to Senator Miguel Diaz de la Portilla et al.  From Ronald A. Labasky, General Counsel* at 2 (emphasis added)(Attached hereto as Exhibit B).

22.     The Act, passed by the Republican-controlled Florida House and Senate, ultimately severely curtailed early voting, in pertinent part, as follows: (1) early voting is to begin on the 10th not the 15th day before an election that contains state or federal races; (2) early voting in such elections shall end on the 3rd not 2nd day before the election (thus eliminating Sunday Voting); (3) the supervisor of elections shall provide early voting for no less than 6 hours and no more than 12 hours per day at each site during the applicable period; and (4) it is in the discretion of the supervisor of elections to provide early voting for elections that are not held in conjunction with a federal or state election and to

determine the hours of operation of early voting sites in those elections.  The Act, § 39, at 47, enacted at § 101.657(d), Fla. Stat. (2011).

23.    During the final debate, the express purpose of the enactment of the Act was to make it difficult for citizens to exercise their right to vote. Senator Michael Bennett, President Pro Tempore of the Florida Senate and one of the most vocal supporters of the Act, stated: "I want the people in the State of Florida to want to vote as badly as that person in Africa who is willing to walk 200 miles for that opportunity he's never had before in his life. This should not be easy." 2011 Fla. Senate Deb., Reg. Sess. at 38:35 (May 5, 2011) (statement of Sen. Bennett).

24.    Legislation has been introduced in both the Florida Senate and House, to, among other things, return early voting to the three days prior to Election Day for all eligible Florida voters as well as returning the start of early voting to the 15th day before the election. However, both of these amendments were voted down by the Republican-controlled Chambers on or about March 9, 2012.

25.    Since at least 2002, the African American voter population in Duval County, and elsewhere in Florida, has grown in its reliance on early voting.  In Duval County and other counties, after Sunday church services, many congregants traveled to the polls to vote on the Sunday immediately preceding Election Day.  In May 2011, African American early voters cast the largest number of votes on the Sunday before Election Day. *See* Affidavit of Professor Daniel A. Smith, attached hereto as Exhibit C and incorporated herein by reference, at ¶18.

26.     According to data from the State of Florida and Supervisors of Elections, African American voters for the 2008 and 2010 elections have disproportionately relied on early voting in casting their ballots. African American voters ended up casting 22 percent of the total early in-person votes in the 2008 General Election even though they comprised approximately 13 percent of the state's total registered electorate. In addition, more African American voters voted early in 2008 (all 14 days) than voted (combined) on Election Day or with an absentee ballot in the 2008 general election. Accordingly, there is a strong reliance upon early voting by African Americans and other minority voters for full and meaningful participation in the political process.

27.     Many African American early voters work long hours during the week, are more available on the weekend, and are most energized just before Election Day. Under the Act, the State of Florida has precluded these counties from permitting early voting on the day when African American early voting is heaviest.

28.     Duval County, Florida and other jurisdictions have previously administered early voting quite successfully. There is no indication that Sunday Voting immediately preceding Election Day or beginning voting the 15th day before Election Day caused any problems in election administration or enabled voter fraud. To the contrary, the enactment of this early vote window has ameliorated many problems Florida previously faced, such as unacceptably long voting lines on Election Day and contributed to the orderly administration of an election.

29.     Florida election law, as currently enacted by the State of Florida, is administered by Defendant Ken Detzner, Florida Secretary of State, and in Duval

County, Florida by Defendant Jerry Holland, the Supervisor of Elections for Duval County. Based upon pronouncements of Defendants, the Defendants intend to enforce the Act's changes to § 101.657(d), Fla. Stat. (2005) for the upcoming August 14, 2012 and November 6, 2012 elections.

30.     The Act discriminatorily and arbitrarily eliminates early Sunday Voting immediately prior to Election Day for most Florida voters as well as changes the start of early voting from the 15th day to the 10th day before Election Day, rights previously available to all Florida voters. This disparate treatment and impact on account of race violates 42 U.S.C. § 1983, the First, Fourteenth and Fifteenth Amendments to the United States Constitution, the Voting Rights Act of 1965, and the Florida Constitution.

**COUNT ONE**
**(Violation of Plaintiffs' Rights Under the First, Fourteenth and Fifteenth**
**Amendments Pursuant to 42 U.S.C. §1983)**

31.     Plaintiffs incorporate by reference herein and reallege the allegations in Paragraphs 1 through 30 above as though set forth fully herein.

32.     Qualified citizens of the United States are entitled to the right to vote under the Constitution of the United States, the First, Fourteenth and Fifteenth Amendments, numerous federal statutes and the Florida Constitution. Voting is a fundamental right for each and every qualified citizen of the United States regardless of, among other things, race or color.

33.     Under law, a state and its officials may not discriminatorily or arbitrarily impose disparate treatment on qualified voters as a result of their race or color. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

13

guarantees African American qualified voters a substantive right to participate equally with other qualified voters in the electoral process, and equal protection applies to the exercise of the right to vote as well. The Fifteenth Amendment to the United States Constitution also guarantees African American citizens that their right to vote shall not be denied or abridged by any State on account of race or color.

34.     Under the First Amendment to the United States Constitution, citizens are entitled to express their views in the voting booth and engage in freedom of association politically through the vote.

35.     A motivating factor and purpose of the Act's amendment to § 101.657(d), Fla. Stat. (2005), was to suppress the turnout of Florida and Duval County African American voters who disproportionately early vote and vote Democratic. Accordingly, the Act's amendments to early voting were on account of race. Any claim that the Act's changes to the early voting law of Florida are for other reasons, such as fiscal savings or voter fraud reduction or voter convenience, is pretext.

36.     The Act's changes to early voting will burden, hinder and infringe upon the right to vote of Plaintiffs and other African American voters due to such voters being habituated to early voting (*see* Exh. C. at ¶¶ 13 and 19), voters' work schedules, ability to travel to the polls, as well as creating a return to times of greater voter confusion, more crowding in voting precincts, longer lines on election day, and an overall less smooth voting process. For example, Plaintiff West is the proprietor of a store in Duval County and relies upon the early voting the Sunday before Election Day to vote due to, among other things, the lack of reliable coverage for his business on Election Day. The Act's

amendments force Plaintiff West to choose between his livelihood and his right to vote, creating an undue burden upon that right without a compelling state interest for doing so. Additionally, other individual Plaintiffs require more time to vote or cannot wait in long lines to vote due to health issues, and also rely upon early voting. The Act's amendments thereby create an undue burden upon those Plaintiffs' right to vote without a compelling state interest for doing so.

37.    In 2004, Florida expanded its early voting period to the two weeks before Election Day. Jurisdictions were required to offer early voting for 8 hours per weekday, and 8 hours in the aggregate per weekend—96 early-voting hours total.

38.    After almost a decade of successful utilization of early voting, the Act changes the early voting schedule again, restricting local authority. The new early vote period runs only from Saturday (10 days before Election Day) to Saturday (3 days before Election Day), with 6-12 voting hours per day. § 101.657(d), Fla. Stat. (2011). Only if county Supervisors of Elections choose to offer the maximum permissible early vote schedule under the Act and have the funds for additional staff, training and overtime, will voters would continue to have 96 total early-voting hours.

39.    Voting on the Sunday before Election has been a right relied upon by greater numbers of African American voters, many of whom work long hours during the week, are more available on the weekend, and are most energized just before Election Day.

40.    Duval County, Florida and other jurisdictions have previously administered early voting quite successfully. There is no indication that Sunday Voting,

beginning voting the 15th day before Election Day or 8 hours of early voting per weekday caused any problems in election administration or increased voter fraud. To the contrary, the enactment of this early vote window has ameliorated many problems Florida previously faced, such as unacceptably long voting lines and crowding on Election Day and contributed to the orderly administration of an election.

41.     There is no legitimate justification for the disparate treatment and impact on account of race created by the Act's changes to the early voting law of Florida, and if any such reason existed, it would not outweigh the burden placed on most, but not all, Florida voters who have been denied the right to vote on the Sunday prior to an election and from the 15th day prior to Election Day.

42.     The change directly impacts a notable form of civic mobilization in Florida in which many houses of worship encourage their congregations to discharge their civic obligations after fulfilling their spiritual ones. After Sunday church services, many congregants traveled to the polls in the counties, such as Duval County, for Sunday voting. The Act removes the option, on the most important Sunday in the voting cycle.

43.     African Americans in Duval County are disproportionately more likely to go to the polls to early vote than other racial or ethnic group in the county.  For example, in the lead up to the 2008 general election, roughly 44 percent of the more than 418,000 votes cast in Duval County were cast during the two-week period early voting period. However, compared with other racial and ethnic groups, a much higher percentage of African Americans in Duval County voted early. Approximately 58 percent of the more than 116,000 African Americans who cast a ballot in Duval County did so during the

two-week early voting period. By comparison, only 38% of the more than 266,000 whites in Duval County who cast a ballot did so during the early voting period. Furthermore, although African Americans in the 2010 general election comprised just 24 percent of the Duval County electorate, African Americans cast over 37 percent of the votes on the final Sunday of early voting, by far the highest percentage of any day over the two-week period. *See generally* Exh. C.

44.     The Act's changes in the early voting law of Florida have the effect of diluting the votes of African American voters in Duval County and other jurisdictions in the State.   In Duval County and much of Florida, African Americans generally constitute an important Democratic voting bloc.

45.  The Act's changes in the early voting law of Florida significantly impedes the right to early vote of individual Plaintiffs and the organizational Plaintiffs' members and thus directly hampers their fundamental speech and associational rights, which are inseparable and intertwined with such voting.

46.     The changes to the early voting law violates Plaintiffs' constitutional rights to speech and association in, but not limited to, the following ways: (1) the shortening of the early voting period, including prohibiting Sunday Voting, is a penalty for the expression of African American votes for the Democratic presidential candidate in the 2008 General Election; (2) the shortening of the early voting period, including prohibiting early voting the Sunday Voting, creates burdensome prior restraints on Plaintiffs' speech and associational rights due to the reliance by African American voters on early voting after the 2000 General Election dispute of almost 27,000 ballots in Duval

County, as well as discounted ballots elsewhere in Florida, whereas early voting provided a sense that African American votes would be counted; and (3) the shortening of the early voting period, including prohibiting Sunday Voting, creates a chilling of Plaintiffs' ability to effectively early vote, associate with others for early voting and to otherwise participate in a meaningful way in the political system.

47.     Plaintiffs have had the opportunity of almost a decade to vote on the Sunday immediately before Election Day as well as from the 15th day prior to Election Day. There is not a legitimate, much less compelling, state interest in restricting Plaintiffs' early voting prior to the Act's changes in the manner provided in the Act. There is no indication that Florida's existing early voting law was inadequate to address Florida's interest in preventing voter fraud or that fiscal reasons required any change. Furthermore, even if Florida had discovered shortcomings in the existing law, the Act's changes to early voting burdens far more speech and associational activity than is necessary to accomplish any legitimate governmental interest. In sum, there is no justification for the unconstitutional burdens on speech and association now imposed by the Act.

48.     Thousands of African American Florida voters, including the individual Plaintiffs, and Plaintiffs' members and supporters, will suffer direct and irreparable injury from the differential treatment created by the Act's changes to the early voting law. These voters may effectively lose the opportunity to vote if they do not have the ability to do so on the Sunday just prior to the election or from the 15th day prior to Election Day, a time period when turnout of African American voters has been particularly heavy in the

past and disproportionately relied upon, and shall have their right to vote affected on

account of race or color for which they cannot be adequately compensated in an action at

law for money damages.

49.    On August 14, 2012, Duval County, Florida will hold elections and the

voters will be precluded from Sunday Voting, August 12, 2012.  Additionally, on

November 6, 2012, Duval County, Florida will hold elections and voters will be

precluded from early voting on November 4, 2012, the Sunday before the election. There

is a bona fide, actual, present practical need for a declaration that the denial of Sunday

Voting and the shortening of the early voting period from the 15th day to the 10th day

prior to Election Day has resulted in African American voters being discriminated against

on account of race or color in the denial of their rights as citizens and voters.

50.    By reason of the foregoing, Defendants, acting under color of state law,

have deprived and will continue to deprive Plaintiffs of equal protection under the law

secured to them by the Fourteenth Amendment to the United States Constitution,

deprived or abridged the Plaintiffs' right to vote on account of race or color secured to

them by the Fifteenth Amendment to the United States Constitution, and deprived

Plaintiffs the expression of their views and the freedom of political association through

the vote secured to them by the First Amendment to the United States Constitution.  All

of these rights are protected by 42 U.S.C. § 1983.

**COUNT TWO**
**(Violation of Voting Rights Act of 1965,**
**42 U.S.C. § 1973)**

51.     Plaintiffs incorporate by reference herein and reallege the allegations in

Paragraphs 1 through 50 above as though set forth fully herein.

52.     Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973(a) provides:

(a)  No voting qualification or prerequisite to voting or standard, practice, or
procedure shall be imposed or applied by any State or political subdivision in a
manner which results in a denial or abridgement of the right of any citizen of the
United States to vote on account of race or color.

53.     African American citizens of Duval County, Florida, and throughout the

State of Florida, as a group, disproportionately participate in Sunday Voting and from the

15th day prior to Election Day, when compared with citizens of Florida and Duval County

who are white.

54.     The changes in § 101.657(d), Fla. Stat. (2005), which deny citizens the

right to Sunday Voting and shorten the early voting period from the 15th day to the 10th

day prior to Election Day, were made to suppress the votes of, *inter alia*, African

American voters.

55.     The changes in § 101.657(d), Fla. Stat. (2005), which deny citizens the

right to Sunday Voting and shorten the early voting period from the 15th day to the 10th

day prior to Election Day, will result in the denial of the right to vote of the individual

Plaintiffs and others on account of race or color in violation of Section 2 of the VRA, 42

U.S.C. § 1973.

20

56.     In addition to the history of denial of the rights of African American citizens in Florida and Duval County to participate in the democratic process of voting before the modern civil rights era, in November 2000, almost 27,000 votes were not counted in Duval County, which fell disproportionately upon the African American voters in Duval County. *See* Duval County, Election Reform Task Force, "Final Report" (June 12, 2001) at p. 6. Sunday Voting and early voting within 15 days of Election Day have ameliorated in many ways the problems African American citizens in Duval County and throughout the State of Florida have experienced with voting. African American voters disproportionately early voted in the 2008 and 2010 elections. *See* Smith Affidavit, Exh. C. The changes to early voting required by the Act will burden, hinder and infringe upon the right to vote of Plaintiffs and other African American voters due to such voters' work schedules, ability to travel to the polls, and other reasons as well as a creating a return to times of greater voter confusion, more crowding in voting precincts, longer lines on election day, and an unnecessarily difficult voting process.

57.     There are elections in Duval County, Florida on August 14, 2012 and November 6, 2012, to which the Act's changes to the early voting law will be applied. Voters will therefore be precluded from early voting the Sunday before Election Day, and early voting from the 15th day prior to Election Day on account of race or color in violation of Section 2 of the VRA, 42 U.S.C. § 1973.

58.     There is a bona fide, actual, present practical need for a declaration that the denial of Sunday Voting and the shortening of the early voting period from the 15th day to the 10th day prior to Election Day has resulted in African American voters being

discriminated against on account of race or color in the denial of their rights as citizens and voters.

59.     The individual Plaintiffs and the members of the organizational Plaintiffs will be irreparably harmed if they are prevented from Sunday Voting and prevented from early voting the 15th day prior to Election Day, and shall have their right to vote affected on account of race or color for which they cannot be adequately compensated in an action at law for money damages.

60.     By reason of the foregoing, Defendants have deprived and will continue to deprive Plaintiffs of their rights to Sunday Voting on account of race or color and the shortening of the early voting period from the 15th day to the 10th day prior to Election Day on account of race or color, thereby resulting in African American voters being discriminated against on account of race or color in the denial of their rights as citizens and voters in violation of Section 2 of the VRA, 42 U.S.C. § 1973.

## COUNT THREE
### (Violation of Florida Constitution)

61.     Plaintiffs incorporate by reference herein and reallege the allegations in Paragraphs 1 through 30 above as though set forth fully herein.

62.     Article VI of the Florida Constitution provides for the right to vote for all qualified citizens of the State of Florida.

63.     Article I, Section 2 of the Florida Constitution provides:

Basic rights.—All natural persons, female and male alike, are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition

22

and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law. No person shall be deprived of any right because of race, religion, national origin, or physical disability.

64.    The Act's provisions amending § 101.657(d),Fla. Stat. (2005), are discriminatory on account of race or color and have the effect of depriving the individual Plaintiffs and organizational Plaintiffs' members of their right to vote. A motivating factor and purpose for the Act's amendments to § 101.657(d) was to suppress voter turnout of Florida and Duval County African American voters who disproportionately early vote and vote Democratic. Any claim that the Act's changes to the early voting law of Florida is for fiscal or voter fraud reduction reasons is pretext.

65.    Duval County, Florida and other jurisdictions have previously administered early voting quite successfully. There is no indication that Sunday Voting or beginning early voting on the 15th day before Election Day or an 8 hour early voting weekday caused any problems in election administration or voter fraud. To the contrary, the enactment this early vote window has ameliorated many problems Florida previously faced, such as unacceptably long voting lines on Election Day and has contributed to the orderly administration of an election.

66.    There is no legitimate justification for the disparate treatment and impact on account of race created by the Act's changes to the early voting law of Florida, and if any such reason existed, it would not outweigh the burden placed on most, but not all, Florida voters who have been denied the right to vote on the Sunday prior to an election and from the 15th day prior to Election Day and for 8 hours on weekdays during the early voting period.

67.     On August 14, 2012, Duval County, Florida will hold elections and the voters will be precluded from Sunday Voting, August 12, 2012.  Additionally, on November 6, 2012, Duval County, Florida will hold elections and voters will be precluded from early voting on November 4, 2012, the Sunday before the election.  There is a bona fide, actual, present practical need for a declaration that the denial of Sunday Voting and the shortening of the early voting period from the 15th day to the 10th day prior to Election Day has resulted in African American voters being discriminated against on account of race or color in the denial of their rights as citizens and voters.

68.     By reason of the foregoing, Defendants, have deprived and will continue to deprive Plaintiffs of their rights secured to them by the Florida Constitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court grant the following relief:

A. An order declaring that the Act's amendment to § 101.657(d), Fla. Stat. changing the deadline for early voting from the 2nd day before Election Day to the 3rd day before Election Day and the shortening of the early voting period from the 15th day to the 10th day prior to Election Day, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, the right to vote under the Fifteenth Amendment of the United States Constitution, and the right to free speech and association under the First Amendment of the United States Constitution, as well as violate the Voting Rights Act of 1965 and the Florida Constitution;

24

B.  A temporary, preliminary and permanent order enjoining the Defendants, their respective agents, servants, employees, attorneys, successors, and all persons acting in concert with each or any of them, from implementing or enforcing the Act's amendments to § 101.657(d), Fla. Stat. (2005), that change the last day for early voting from the 2nd day before Election Day to the 3rd day before Election Day and the shortening of the early voting period from the 15th day to the 10th day prior to Election Day, thereby restoring early voting through the Sunday immediately preceding Election Day and early voting beginning the 15th day prior to Election Day for all eligible Florida voters;

C.  Attorney fees and costs; and

D.  Such other and further relief as this Court may deem necessary or proper.

Respectfully Submitted,

Neil L. Henrichsen
Fla. Bar No. 0111503
Helen H. Albee
Fla. Bar No.987247
Joseph F. DeBelder
Fla. Bar No. 0193800
Wendy Byndloss
Fla. Bar No.0048718
HENRICHSEN SIEGEL, P.L.L.C.
1648 Osceola Street
Jacksonville, FL 32204
Phone: (904)381-8183
Fax: (904)381-8191
nhenrichsen@hslawyers.com
halbee@hslawyers.com
jdebelder@hslawyers.com
wbyndloss@hslawyers.com

Trial Counsel for Plaintiffs